IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| MOMAX, LLC, ET AL., | § | |
| Plaintiffs, | § § § | |
| VS. | § | NO. 4:07-CV-432-A |
| TRC NUTRITIONAL LABS., INC., ET AL., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION
### and
### ORDER

Came on for consideration the motions of defendants TRC Nutritional Laboratories, Inc. ("TRC"), Elmer G. Heinrich ("Elmer"), Shirley A. Heinrich ("Shirley"), R.D. "Rocky" Heinrich ("Rocky"), Elmer G. Heinrich Trust (the "Elmer Trust"), and Shirley A. Heinrich Trust (the "Shirley Trust") (collectively, "movants"), to dismiss the claims asserted against them by plaintiff, Momax, LLC ("Momax"), in the above-captioned action, for lack of personal jurisdiction and improper venue. For the reasons set forth below the court concludes that such motions should be denied.

### I.

### Background

Parties in the instant action were involved in an underlying lawsuit styled <u>Momax, LLC v. The Rockland Corporation</u> and numbered 3:02-CV-2613-L ("underlying lawsuit"), in which final judgment was issued in favor of Momax on September 30, 2005. Rocky, as president of the Rockland Corporation, was served on

September 7, 2006, with a writ of execution that was issued by the clerk of the United States District Court for the Northern District of Oklahoma. Following service of the writ of execution on Rocky, the United States Marshal stated in the remarks section of the Process Receipt and Return that,

> "Heinrich advised that all property & assets at the above location [12320 E. Skelly Dr., Tulsa, Oklahoma] was owned by the Elmer Heinrich Trust. Heinrich also advised the Rockland Corp. was no longer doing business. The company located at the above address [12320 E. Skelly Dr., Tulsa, OK] is now TRC Nutritional Laboratories."

Pls.' Compl. 6.

Momax was unable to collect on its judgment and filed the complaint in the instant action on June 11, 2007. Movants' subsequently filed their motions to dismiss for lack of personal jurisdiction and improper venue pursuant to Rule 12(b)(2)&(3) of the Federal Rules of Civil Procedure.

II.

Personal Jurisdiction

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that in personam jurisdiction exists. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994); Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985); D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 545-46 (5th Cir. 1985). The plaintiff need not, however, establish personal jurisdiction by a preponderance of the evidence; prima facie evidence of personal jurisdiction is sufficient. WNS, Inc.

v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989); Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982). The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. Command-Aire v. Ontario Mechanical Sales & Serv., Inc., 963 F.2d 90, 95 (5th Cir. 1992). Allegations of the plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits. Wyatt, 686 F.2d at 282-83 n.13 (citing Black v. Acme Markets, Inc., 564 F.2d 681, 683 n.3 (5th Cir. 1977)). Any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for purposes of determining whether a prima facie case exists. Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1067 (5th Cir. 1992); Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990).

In a diversity action, personal jurisdiction over a nonresident may be exercised if (1) the nonresident defendant is amenable to service of process under the law of a forum state, and (2) the exercise of jurisdiction under state law comports with the due process clause of the Fourteenth Amendment. Wilson, 20 F.3d at 646-47; Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1166 (5th Cir. 1985) (quoting Smith v. DeWalt Prods. Corp., 743 F.2d 277, 278 (5th Cir. 1984)). Since the Texas long-arm statute has been interpreted as extending to the limits of due

process,[1] the only inquiry is whether the exercise of jurisdiction over the nonresident defendant would be constitutionally permissible. Bullion, 895 F.2d at 216; Stuart, 772 F.2d at 1189.

For due process to be satisfied, (1) the nonresident defendant must have "minimum contacts" with the forum state resulting from an affirmative act on the defendant's part, and (2) the contacts must be such that the exercise of jurisdiction over the person of the defendant does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

The minimum contacts prong of the due process requirement can be satisfied by a finding of either "specific" or "general" jurisdiction over the nonresident defendant. Bullion, 895 F.2d at 216. For specific jurisdiction to exist, the foreign defendant must purposefully do some act or consummate some transaction in the forum state and the cause of action must arise from or be connected with such act or transaction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

III.

Analysis

A. Minimum contacts

Momax admits that she has insufficient evidence at this time

---

[1] See, e.g., Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200 (Tex. 1985).

4

to establish general jurisdiction. Rather, Momax argues that the court has specific jurisdiction because the claims against movants arise out of and are related to the alleged contacts by movants with Texas. Specific jurisdiction exists "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King, 471 U.S. at 475. The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party." Id. (internal quotation marks and citations omitted).

> formulated and engaged in a fraudulent scheme to transfer all of the assets of Rockland to TRC and other entities so that the revenues generated from the operation of the business of Rockland could be used and enjoyed by the defendants while the Plaintiffs were prevented from using the property to satisfy the claims of the Plaintiffs and the Judgment.

In the instant action, Momax asserts that movants

Pls.' Compl. 9. Movants, in their motions to dismiss, argue that, even assuming the asserted "fraudulent transfers" occurred, all of the activity happened in Oklahoma and therefore, movants do not have minimum contacts with Texas sufficient to confer personal jurisdiction on this court. Momax filed oppositions in which it maintains that movants' activities, in fraudulently transferring assets in Oklahoma, were directed at Momax, a citizen of Texas, because the purpose of the transfers was to avoid paying the judgment rendered in the Texas underlying lawsuit in favor of Momax. Thus, Momax contends that this court

5

has specific jurisdiction over movants for purposes of the instant action because all of its claims relate to movants' "fraudulent transfers".

Movants have not, by affidavit or other evidence, disputed the Momax's allegations that the purported transfers took place.[2] Accordingly, such allegations are taken as true. Wyatt, 686 F.2d at 282-83 n.13. The court concludes that Momax has met its burden in showing that movants' actions created a substantial connection with Texas. See Burger King, 471 U.S. at 475. Thus, the court further concludes that the minimum contacts prong of the due process requirement is satisfied.

B. Traditional Notions of Fair Play and Substantial Justice

The second prong of the due process analysis is whether exercise of jurisdiction over the nonresident defendant would comport with traditional notions of fair play and substantial justice. International Shoe, 326 U.S. at 316. In determining whether the exercise of jurisdiction would be reasonable such that it does not offend traditional notions of fair play and substantial justice, the Supreme Court has instructed that courts look to the following factors: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's

---

[2] While movants dispute that the alleged transfers were fraudulent, they do not appear to contend, in their declarations attached to their joint appendix or otherwise, that the purported transfers did not occur. For example, Elmer's declaration states that, "I have reviewed the claims asserted by Momax and Greer in the case filed in Texas. All of the claims and allegations relate to matter which occurred primarily in Oklahoma. So far as I can understand the lawsuit, none of the alleged 'transfers' took place in Texas." Movants' Joint App. 3.

6

interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) shared interest of the several states in furthering fundamental substantive social policies. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

Here, Momax instituted this action to recover a judgment rendered in the underlying lawsuit. The underlying lawsuit was litigated in Texas, thus, Texas has an interest in seeing that such judgment is properly enforced. While movants may argue that Oklahoma would be a more convenient forum, such factor alone is not enough to upset traditional notions of fair play and substantial justice. Further, the factors involving the most efficient forum and fundamental social policies do not weigh against or in favor of litigating the instant action in Texas. Thus, in applying all the factors, the court concludes that its exercise of jurisdiction over movants is constitutionally permissible.

C. Venue

Movants argue that even if the court concludes that it has personal jurisdiction, venue in the Northern District of Texas is improper because (1) movants do not all reside in the same state, (2) none of the alleged transfers took place in Texas, (3) there is no related property in Texas, and (4) there are other districts in which Momax could have otherwise instituted this

action. Momax maintains that it has satisfied the requirements of 28 U.S.C. § 1392(a)(2)[3], to establish that venue is proper in the Northern District of Texas because "a substantial part of the events or omissions giving rise to the claim occurred" in that district. § 1392(a)(2). While the court agrees with movants' statement that the alleged transfers did not occur in Texas, such transfers are the basis of the instant action. Thus, because the court has concluded that movants' activities involving the transfers were directed at citizens of Texas, the fact that the actual transferring of assets would have occurred in Oklahoma, does not preclude the finding of proper venue in the Northern District of Texas.

IV.

ORDER

For the reasons discussed above, the court concludes that movants' motions to dismiss for lack of personal jurisdiction and improper venue should be denied. Therefore,

The court ORDERS that movants' motions to dismiss for lack of personal jurisdiction and improper venue be, and are hereby, denied.

SIGNED August 15, 2007.

JOHN McBRYDE
United States District Judge

---

[3] The court notes that Momax appears to have inadvertently cited to 28 U.S.C. § 1391(b)(2), which, although identical to §1391(a)(2), concerns actions where jurisdiction is not founded solely on diversity of citizenship. Because the instant action is founded solely on diversity of citizenship, the applicable, subsection is (a)(2) of § 1391

8